UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

LISA BELLIN,

        Plaintiff,

  v.                                  Case No. 17-C-1479

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

        Defendant.

**DECISION AND ORDER**

This is an action for judicial review of the final decision of the Commissioner of Social Security denying Lisa Bellin's applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act. For the reasons set forth below, the Commissioner's decision will be affirmed.

**BACKGROUND**

On April 23, 2012, Plaintiff, age 50 at the time, completed applications for disability, DIB, and SSI with her alleged disability beginning January 1, 2009. She listed back problems and related symptoms, severe back pain, high blood pressure, anxiety, depression, numbness and tingling in her lower extremities, trouble and pain when walking, and pain when sitting and standing as the conditions that limited her ability to work. R. 63–64. Following the denial of her applications initially and on reconsideration, Plaintiff requested a hearing before an administrative law judge (ALJ). ALJ John Kraybill conducted a hearing on February 4, 2015. Plaintiff, who was represented by counsel, a medical expert, and a vocational expert testified. R. 34–60. At the outset of the

hearing, Plaintiff's counsel indicated Plaintiff sought a closed period of disability from September 13, 2010 through March 1, 2014. R. 37.

At the time of the hearing, Plaintiff lived alone in a second-floor apartment in Oshkosh, Wisconsin. R. 38. Plaintiff worked at a factory until 2006 or 2007 but quit that job because she did not want to work twelve-hour days and the work was physically demanding. R. 41. She then worked as a hostess at Friar Tuck. R. 39. Her job duties included greeting customers, giving them menus, and seating them at tables. Because this job required that she be on her feet, she worked only two to two-and-a-half hours each shift. *Id.* In 2014, she began working four-hour shifts at Culver's. R. 48. Her duties included running food to customers, stocking shelves, cleaning restrooms, cleaning the dining room, and washing windows. R. 49. She worked at Culver's for approximately six months before returning to her position at Friar Tuck.

As to her physical pain, Plaintiff testified that she had a dull numbness and achy feeling in her back that went down her legs. R. 43. Although the pain occasionally radiated down both legs into her toes, it mostly radiated down the right side. She took Advil, Tylenol, and Aleve for the pain. R. 39. She reported that she could sit for an hour to an hour and a half, stand for one to two hours, and walk about three or four blocks. R. 44. Plaintiff testified that, prior to the back pain, she had been a very active person and worked full-time. She enjoyed having pets, gardening, going for walks, and having friends over. Plaintiff indicated that she cannot do some of the activities she used to do or can only do them for a short period of time. R. 46. Plaintiff also testified about her average day. She reported that she takes care of herself; does the laundry, cooking, and cleaning; and drives. R. 40. During the day, she reads books and watches television. She also goes for walks or rides her bike if her back is not hurting. R. 42.

In a written decision dated February 13, 2015, the ALJ concluded Plaintiff was not disabled. R. 21–29. Following the agency's five-step sequential evaluation process, the ALJ concluded at step one that Plaintiff had not engaged in substantial gainful activity since January 1, 2009. R. 23. At step two, the ALJ found Plaintiff's back disorder was a severe impairment. *Id.* At step three, the ALJ determined Plaintiff's impairments or combination of impairments did not meet or medically equal any listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 25. After considering the entire record, the ALJ concluded Plaintiff has the residual functional capacity (RFC) to perform the full range of light work and could lift/carry 20 pounds occasionally and 10 pounds frequently, stand/walk about six hours in an 8-hour workday, and sit about two hours in an 8-hour workday, with normal breaks. He also found Plaintiff capable of occasional postural activities. *Id*. The ALJ found at step four that Plaintiff was unable to perform any past relevant work as a machine packager. R. 28. He nevertheless concluded at step five that there are jobs that exist in significant numbers in the national economy Plaintiff can perform, such as fast food worker, office helper, and information clerk. R. 29. Based on these findings, the ALJ concluded Plaintiff was not disabled within the meaning of the Social Security Act. The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review. Thereafter, Plaintiff commenced this action for judicial review.

## LEGAL STANDARD

The Commissioner's final decision will be upheld if the ALJ applied the correct legal standards and supported his decision with substantial evidence. 42 U.S.C. § 405(g); *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). Substantial evidence is "such relevant evidence as a reasonable mind could accept as adequate to support a conclusion." *Schaaf v. Astrue*, 602 F.3d 869,

874 (7th Cir. 2010). Although a decision denying benefits need not discuss every piece of evidence, remand is appropriate when an ALJ fails to provide adequate support for the conclusions drawn. *Jelinek*, 662 F.3d at 811. The ALJ must provide a "logical bridge" between the evidence and his conclusions. *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000).

The ALJ is also expected to follow the SSA's rulings and regulations in making a determination. Failure to do so, unless the error is harmless, requires reversal. *Prochaska v. Barnhart*, 4545 F.3d 731, 736–37 (7th Cir. 2006). In reviewing the entire record, the court does not substitute its judgment for that of the Commissioner by reconsidering acts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Finally, judicial review is limited to the rationales offered by the ALJ. *Shauger v. Astrue*, 675 F.3d 690, 697 (7th Cir. 2012) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943); *Campbell v. Astrue*, 627 F.3d 299, 307 (7th Cir. 2010)).

**ANALYSIS**

**A. Step Three Determination**

Plaintiff asserts that the ALJ's listing discussion at step three is inadequate. At step three, the ALJ must determine whether the plaintiff's impairments or combination of impairments meet or medically equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(a)(4)(iii). "In considering whether a claimant's condition meets or equals a listed impairment, an ALJ must discuss the listing by name and offer more than perfunctory analysis of the listing." *Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015) (quoting *Burnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)).

In this case, the ALJ's step three determination was not perfunctory. The ALJ determined Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. In making this finding, the ALJ explained that he "specifically considered the criteria of listing 1.04 concerning the claimant's back disorder." R. 25. He noted:

> [T]here is no evidence of nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis with ineffective ambulation in the medical record. According to the claimant's testimony, she walks, rides her bike, drives and performs household chores. Similarly, according to the claimant's function reports, she makes meals, performs light housework, mows the grass, drives, shops in stores, swims and rides her bike.

*Id.* Even though the ALJ's step three determination consists of only one paragraph, when considered in combination with his analysis of Plaintiff's RFC, the ALJ met his "duty to articulate." *Curvin v. Colvin*, 778 F.3d 645, 650 (7th Cir. 2015) ("The ALJ provided the discussion of Curvin's severe and non-severe impairments, the objective medical evidence, and her credibility directly after step 3 when he determined her RFC. This discussion provides the necessary detail to review the ALJ's step 3 determination in a meaningful way."); *Summers v. Colvin*, 634 F. App'x 590, 593 (7th Cir. 2016) (noting that although the ALJ's initial Step 3 discussion was brief, "we read the ALJ's decision as a whole and later the ALJ addressed [the claimant's] evidence more thoroughly and explained why the record did not establish the criteria required to satisfy Listing 1.04").

The ALJ first discussed Plaintiff's medical records. He observed that the records contain conservative and sporadic treatment, including chiropractic care in March 2009; physical therapy from May 5, 2009 through May 12, 2009; acupuncture treatment; and over-the-counter pain medication. R. 26. The ALJ noted that a September 2010 radiology report of the lumbar spine

showed degenerative disease at L5-S1, her physical examination report notes normal gait with the ability to toe and heel walk, full lumbar range of motion, negative straight-leg raise testing, and 4+ to 5/5 muscle strength. A May 2012 MRI report noted mild degenerative changes of the lower lumbar spine and a radiology report noted moderate degenerative disk disease at L5-S1. A May 2012 physical examination revealed that Plaintiff walked with a normal gait, Plaintiff walked on her heel and toe without much difficulty, and straight-leg raise testing was negative. Although a neurologist recommended anterior lumbar interbody fusion at L5-S1, the ALJ noted there is no indication that Plaintiff underwent the procedure. In addition, at a June 2012 appointment, Plaintiff presented for smoking cessation and denied any joint pain or muscle weakness. *Id.*

The ALJ also discussed the testimony of Dr. Jilhewar, the independent medical expert. Dr. Jilhewar noted that the records show only minimal disc bulging. Dr. Jilhewar testified that, although the record contained pain management records from 2012, he was unable to find any documentation of a series of three injections. R. 26–27. The ALJ also noted that Dr. Jilhewar testified that there was an 18-month gap in the treatment record for Plaintiff's episodic problems, and there are no medical records after 2012. R. 27. As for the opinions of the state agency consultants, Dr. Mina Khorshidi and Dr. Pat Chan found that Plaintiff can perform a range of light exertion. The ALJ afforded these opinions great weight because they were consistent with the sporadic and minimal treatment of record as well as Plaintiff's activities of daily living, which show an ability to perform light household chores, making meals, shopping in stores, and mowing the lawn. The ALJ noted that no medical source limited Plaintiff beyond the residual functional capacity assessments completed by the state agency physicians. R. 27.

Finally, the ALJ concluded Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely credible. He observed that Plaintiff had generally not received the type of treatment one would expect for a person suffering from the degree of pain and limitation contended. He also noted Plaintiff's activities of daily living did not support the alleged severity of pain or limitations.

In short, the court finds no error with the ALJ's step three determination. The ALJ identified the potentially applicable listing; explained that the evidence did not meet the listed criteria; and later analyzed Plaintiff's severe and nonsevere impairments, the objective medical evidence, the medical opinions, and Plaintiff's subjective symptoms. The ALJ met his duty to articulate his step three finding and it is sufficiently supported by the record. Accordingly, the ALJ's step three determination was not improper.

**B. Activities of Daily Living**

Plaintiff contends the ALJ improperly evaluated her activities of daily living because he equated Plaintiff's ability to perform these activities with an ability to work full time. While an ALJ must consider the claimant's daily activities as one of the factors in evaluating the intensity and persistence of pain, "this must be done with care." *Roddy v. Astrue*, 705 F.3d 631, 639 (7th Cir. 2013). The Seventh Circuit has chastised ALJs for finding that a claimant can work a full-time job simply because she can perform certain activities at home. *See Moore v. Colvin*, 743 F.3d 1118, 1126 (7th Cir. 2014). In this case, the ALJ did not equate Plaintiff's ability to perform certain activities of daily living with an ability to work full time. Instead, he used her reported activities to assess the credibility of her statements concerning the intensity, persistence, or limiting effects of her symptoms. *See Pepper v. Colvin*, 712 F.3d 369, 369 (7th Cir. 2013) ("The ALJ concluded

7

that, taken together, the amount of daily activities Pepper performed, the level of exertion necessary to engage in those types of activities, and the numerous notations in Pepper's medical records regarding her ability to engage in activities of daily living undermined Pepper's credibility when describing her subjective complaints of pain and disability."). The ALJ noted that, despite Plaintiff's testimony that she experienced constant back pain and numbness, she performed household chores, drove, walked, mowed the grass, shopped in stores, swam, rode her bike, and gardened. R. 27–28. The ALJ observed that Plaintiff's activities "do not support the alleged severity of pain or limitations." R. 27. The ALJ explained that, based upon the overall diagnostic evidence, physical examinations, and other medical evidence, Plaintiff's level of daily functioning contradicted her statements regarding her symptoms. In short, the ALJ's conclusion is supported by substantial evidence and does not necessitate remand.

## CONCLUSION

For the above reasons, the decision of the Commissioner is **AFFIRMED**. The Clerk is directed to enter judgment accordingly.

**SO ORDERED** this  28th  day of December, 2018.

s/ William C. Griesbach
William C. Griesbach, Chief Judge
United States District Court
